Affirmed and Memorandum Opinion filed December 14, 2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00717-CV



 

Letitia Heaton Watson, Appellant

V.

John Heaton, Appellee

 



On Appeal from the 309th
District Court

Harris County, Texas

Trial Court Cause No. 2008-76265



 

MEMORANDUM  OPINION

 

Letitia Heaton Watson brought this enforcement action
against her former spouse, John Heaton, regarding the property settlement
agreement incorporated into the parties’ divorce decree.  See Tex. Fam. Code
Ann. §§ 7.006, 9.006 (Vernon 2006).  The trial court denied Watson’s request to
retake possession of a house in Baytown awarded to Heaton under the agreement
and decree.  We affirm.  

BACKGROUND

Watson and Heaton divorced in 2008.  Their divorce
decree incorporated the parties’ property settlement agreement,[1]
which states in relevant part:

[Heaton] is awarded [the parties’ former residence in
Baytown] as his sole and separate property, and [Watson] is divested of all
right, title, interest, and claim in and to that property[.]

[Heaton] . . . shall pay [Watson] half . . . of the equity
[in the Baytown residence] on the date of divorce payable as follows:

Payment in full within ninety (90) days, if amount owed [based
on appraisal and mortgage balance is] more than $10,000.  Then payment shall
be:

(a) $10,000 within ninety (90)
days of the date of the divorce.

(b) The remaining sums due, if
any, payable in equal monthly installments for 36 months . . . .

                        *                                  *                                  *

[Watson] is awarded [one-half the equity in the Baytown
residence].  

                        *                                  *                                  *

[Heaton] shall pay, as a part
of the division of the estate of the parties, [the remaining balance due on the
existing Baytown residence mortgage, which is in Watson’s name, and half the
equity to Watson].

The parties dispute the
meaning of a handwritten provision in the settlement agreement that refers either
to Heaton’s obligation to pay (1) the mortgage payments; or (2) Watson for her
one-half equity interest:

[Heaton] agrees to make all
payments timely.  If [Heaton] is ever more than thirty (30) days late, he shall
be in default of the terms and conditions of this decree and [Watson] may take the
remedy of repossession to protect her credit.

It is undisputed that Heaton
failed to pay Watson for her one-half equity interest according to the payment
schedule.  It also is undisputed that the parties were behind on their mortgage
payments before the divorce; Heaton testified that he was working with the
mortgagee to avoid foreclosure proceedings, but that the mortgage was not
current.    

Although Watson disclaims any intent to obtain
ownership of the house, she argues that Heaton’s default triggers her “remedy
of repossession” and entitles her to retake physical possession of the Baytown
residence.  Heaton contends that the “remedy of repossession” entitles Watson only
to bring a foreclosure action to protect her one-half equity interest in the
Baytown residence.  

Following a bench
trial, the trial court denied Watson’s requested relief for 
“immediate possession” of the Baytown residence, together with “all rights,
title and interest” pursuant to her vendor’s lien against the Baytown
residence.  Watson appeals.[2] 
Based on the foregoing analysis, we find no error with the trial court’s judgment.

I.         Alteration of the Substantive Division of
Property

Enforcement of a divorce decree’s property division
is governed by section 9.006 of the Family Code, which provides in relevant
part:

(a) Except as provided by this
subchapter and by the Texas Rules of Civil Procedure, the court may render
further orders to enforce the division of property made in the decree of
divorce or annulment to assist in the implementation of or to clarify the prior
order.

Tex. Fam. Code Ann. § 9.006(a). 
This enforcement authority is limited by section 9.007 of the Family Code,
which states:

A court may not amend, modify,
alter, or change the division of property made or approved in the decree of
divorce or annulment.  An order to enforce the division is limited to an order
to assist in the implementation of or to clarify the prior order and may not
alter or change the substantive division of property.

Tex. Fam. Code Ann. § 9.007(a)
(Vernon 2006).  

According to the divorce decree, Watson retains a
one-half interest in the equity of the Baytown residence but is “divested of
all right, title, interest and claim in and to that property.”  Heaton received
the Baytown residence as his “sole and separate property” under the divorce
decree, subject only to Watson’s one-half equity interest.  An enforcement
order granting Watson a possessory interest in the house and ordering Heaton to
vacate would alter the divorce decree’s division of property; such an order would
(1) burden Heaton’s undivided ownership of the Baytown residence; and (2) grant
Watson more than her one-half equity interest in the Baytown residence.  

The trial court properly denied Watson’s requested
relief because it had no authority to issue an order altering the division of
property under the divorce decree.  See Tex. Fam. Code Ann. §§ 9.006–9.007. 


II.        Contract
Interpretation

Additionally, the trial court’s judgment was not
erroneous because it could properly conclude that Watson’s interpretation of
“repossession” fails under contract interpretation rules.  

Courts interpret marital property agreements
incorporated into divorce decrees under the law of contracts.  See Allen v.
Allen, 717 S.W.2d 311, 313 (Tex. 1986).  In construing such an agreement,
the primary concern of the court is to ascertain the true intentions of the
parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983).  Courts should examine and consider the entire writing in an
effort to harmonize and give effect to all the provisions of the contract.  Id. 
The court must give terms their plain, ordinary, and generally accepted meaning
unless the instrument shows that the parties used them in a technical or
different sense.  Heritage Resources, Inc. v. NationsBank, 939 S.W.2d
118, 121 (Tex. 1996).  If the contract as worded can be given a definite legal
meaning or interpretation, then it is not ambiguous and the court will construe
it as a matter of law.  Coker, 650 S.W.2d at 393.

Whether an ambiguity exists is a question of law for
the court to decide.  Nat’l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI
Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  A contract is ambiguous if
its meaning is uncertain or it is reasonably susceptible to more than one
meaning.  Coker, 650 S.W.2d at 393.  The interpretation of an ambiguous
contract is a fact issue.  Id.

The trial court commented at trial that the parties’
use of the word “repossession” in the agreement renders the effect of Heaton’s
default unclear: 

“[T]he way I, at least, look at this decree, which I think
we all agree, perhaps, could have been better drafted, there is the issue of
[who] still owns . . .  the whole thing, under the decree.  [Heaton] was
awarded the whole house, subject to . . . [Watson’s] equity interest . . .
[which] gives her a lien on her half interest in the house . . . .

                        *                                  *                                  *

They’re requesting — and I’m
considering giving him a date to move out of the house and for her to move back
in.  But the issue that’s still to address, then, who makes the mortgage
payments?  

                        *                                  *                                  *

What I’m struggling with is
who lives in the house in the interim?  They say they don’t want me to sell
it.  She wants to move back in and live there.

The parties did not request and the trial court did
not enter findings of fact or conclusions of law when it denied Watson’s petition
for enforcement.  When the trial court does not enter findings of fact and
conclusions of law following a bench trial, the trial court’s judgment implies
all findings of fact necessary to support it.  Pharo v. Chambers Cnty.,
922 S.W.2d 945, 948 (Tex. 1996).  Unless Watson demonstrates that the trial
court’s judgment is unsupported by any legal theory raised by the evidence, we
will uphold the trial court’s judgment.  See Point Lookout W., Inc. v.
Whorton, 742 S.W.2d 277, 279 (Tex. 1987); Kotis v. Nowlin Jewelry, Inc.,
844 S.W.2d 920, 922 (Tex. App.—Houston [14th Dist.] 1992, no writ).   

The trial court stated: “I don’t know if they mean
[“repossess”] in a legal sense . . . or if they mean it in a sense of go back
and move in . . . .”  If the trial court had adopted Watson’s interpretation of
“repossession,” the trial court would have additionally needed to decide (1) whether
and how Watson should pay Heaton for his remaining one-half equity interest;
and (2) which party should continue making mortgage payments.  The settlement
agreement provides no details to govern such a situation.  Further, the parties
agreed that the remedy of “repossession” would be available “to protect [Watson’s]
credit.”  Watson’s request to retake possession of the Baytown residence does nothing
to “protect her credit” in the event of Heaton’s default; such an
interpretation would not change the provisions in the settlement agreement
granting Heaton full ownership of the Baytown residence and obligating Heaton
to make the mortgage payments.  Watson’s interpretation would render the phrase
“to protect her credit” meaningless.

Accordingly, the trial court could have concluded
that Watson’s proposed interpretation of the word “repossession” is not
reasonable, based on the plain meaning of the word, the intent of the parties,
and the operation of the agreement as a whole.  See Heritage Resources, Inc.,
939 S.W.2d at 121; Coker, 650 S.W.2d at 393.  The trial court alternatively
could have concluded that the term is ambiguous, and that the facts support
Heaton’s interpretation.  See Nat’l Union Fire Ins. Co. of Pittsburgh, Pa.,
907 S.W.2d at 520; Coker, 650 S.W.2d at 393.  Watson has not shown how
either conclusion is erroneous.  Point Lookout W., Inc., 742 S.W.2d at
279.  We conclude that the trial court did not err. 

III.      Vendor’s Lien

Watson also argues that her vendor’s lien on the
Baytown residence entitles her to retake possession of the property.  We
disagree.  

When a divorce decree approves a settlement agreement
by which one spouse agrees to pay a sum of money in consideration for the other
spouse’s interest in a particular piece of real estate, a vendor’s lien arises
by implication to secure the payment.  McGoodwin v. McGoodwin, 671
S.W.2d 880, 882 (Tex. 1984).  Such a lien holder is entitled to foreclose on and
sell his or her interest in the property.  Id. at 883.  However, a lien
holder does not hold title to the property.  Day v. Day, 610 S.W.2d 195,
199 (Tex. Civ. App.—Tyler 1980, no writ).  A vendor’s lien is not an estate in
the property to which it attaches, but merely an encumbrance against the
property to satisfy debt.  Karigan v. Karigan, 239 S.W.3d 436, 439 (Tex.
App.—Dallas 2007, no pet.); Chorman v. McCormick, 172 S.W.3d 22, 24
(Tex. App.—Amarillo 2005, no pet.).  Thus, Watson’s vendor’s lien does not
entitle her to any remedy except to foreclose on and sell her one-half equity
interest in the Baytown residence.  See McGoodwin, 671 S.W.2d 882–83. 
Because Watson did not seek to foreclose on her one-half equity interest, the
trial court correctly denied Watson’s petition for enforcement.  

 

CONCLUSION

Having overruled Watson’s only issue on appeal, we
affirm the judgment of the trial court.








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.









[1]
See Tex. Fam. Code Ann. § 7.006(a), (b) (“To promote amicable settlement
of disputes in a suit for divorce . . . the spouses may enter into a written
agreement concerning the division of property . . . .  If the court finds that
the terms of the written agreement . . . are just and right, those terms are
binding on the court.  If the court approves the agreement, the court may set
forth the agreement in full or incorporate the agreement by reference in the
final decree.”).





[2]
Watson appeals from the trial court’s May 15, 2009 order denying enforcement of
the property division in the divorce decree.  This final order is governed by
rules generally applicable to civil cases.  See Tex. Fam. Code Ann. §
9.001(b), (c) (Vernon 2006).   The district clerk stamped Watson’s
motion for new trial as filed on June 17, 1009 — 32 days after the order was
signed.  See Tex. R. Civ. P. 329b(a).  Watson submitted an
uncontroverted affidavit, in which her counsel swears that he mailed the motion
to the district clerk by first class United States Mail on the June 15, 2009
deadline.  See Tex. R. Civ. P. 5.  In the absence of a legible postmark,
an attorney’s uncontroverted affidavit establishing the date of mailing may be
sufficient evidence of the mailing date, and therefore, of the filing date.  Lofton
v. Allstate Ins. Co., 895 S.W.2d 693, 693–94 (Tex. 1995) (per curiam). 
Because the district clerk received the timely-mailed motion within ten days of
the deadline, we treat Watson’s motion for new trial as timely filed.  See Tex.
R. Civ. P. 5; 329b(a).  Watson’s notice of appeal was due to the district clerk
on August 13, 2009 — 90 days after the trial court signed the final order.  See
Tex. R. App. P. 26.1(a)(1).  The district clerk stamped Watson’s notice as
filed on August 14, 2009.  However, this court recorded that Watson’s motion
was mailed on the deadline.  Thus, Watson’s notice of appeal also was timely.  See
Tex. R. App. P. 9.2(b) (“A document received within ten days after the filing
deadline is considered timely filed if . . . it was deposited in the mail on or
before the last day of filing.”); Tex. R. App. P. 25.1(a) (“If a notice of
appeal is mistakenly filed with the appellate court, the notice is deemed to
have been filed the same day with the trial court clerk . . . .”).  Although Watson’s
brief states that she appeals from the trial court’s “Judge’s Report,” her
notice of appeal refers to the May 15, 2009 final order and constitutes a bona
fide attempt to appeal from the final order.  See generally Verburgt v.
Dorner, 959 S.W.2d 615, 616 (Tex. 1997).